IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GREGORY LEON HAMMER, ) | |
| ) | Civil Action No. 7:20cv00526 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| PATRICK OBER, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) |          United States District Judge |
| Defendants. ) | |

Gregory Leon Hammer, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, against medical and other staff at Middle River Regional Jail ("Middle River"), alleging that they failed to provide him with constitutionally adequate medical care concerning his seizures. Dr. Ottolini has moved for summary judgment, arguing that Hammer has not established that he was deliberately indifferent to a serious medical need.[1] After reviewing the evidence, the court agrees and will grant his motion.

I.

In his third amended complaint, Hammer argues that the defendants, including Dr. Ottolini, were deliberately indifferent to his serious medical needs because they discontinued and/or did not re-prescribe gabapentin as treatment for his seizures.

Hammer alleges that on November 27, 2018, he was treated for a seizure at Augusta Health Center ("Augusta Health"), a local hospital, and his anti-seizure medications of

---

[1] In addition, Physician Assistant ("PA") Ober and PA Munsey have moved to dismiss (ECF Nos. 99 & 153), and Dr. Hereford, Director Nicholson, and Nurse Chestnut have moved for summary judgment (ECF Nos. 102, 56, & 58). The court will address those motions separately.

gabapentin[2] and Keppra[3] were "renewed."[4] Hammer states that these two prescriptions were brought with him when he entered Middle River that same day. Hammer claims that he continued to receive his prescriptions for gabapentin and Keppra from November 2018 until June 2019. In June 2019, medical staff informed Hammer that gabapentin had become a controlled substance and was being discontinued at Middle River. Medical staff ordered a taper of Hammer's gabapentin prescription, with it terminating on July 1, 2019. But Hammer's prescription for Keppra remained in effect.. Hammer claims that he was told that only inmates who had been prescribed gabapentin for seizures would continue to receive it. Hammer claims that he advised medical staff that his prescription for gabapentin was to treat his seizures and requested that staff obtain his medical records from Augusta Health and the VDOC to confirm this. Hammer states that his "pleas" for staff to obtain his medical records "went ignored." (ECF No. 80, at 3.) Hammer states that in August 2019, he stopped taking the Keppra because it was "ineffective and was making him vomit." (*Id.*)

On August 31, 2020, more than a year after his gabapentin prescription had been discontinued, Hammer saw Dr. Ottolini for the first time. Hammer states that he informed Dr. Ottolini that he had been having seizures "because the Keppra without the gabapentin was ineffective for his antiepileptic therapy." (*Id.* at 4.) He also advised Dr. Ottolini that he

---

[2]   Gabapentin is anticonvulsant or antiepileptic drug. *See* WebMD, Gabapentin, https://www.webmd.com/drugs/2/drug-14208-8217/gabapentin-oral/gabapentin-oral/details (last visited Mar. 21, 2022). It is used with other medications to prevent and control seizures. *Id.*

[3] Keppra is an anticonvulsant. *See* WebMD, Keppra, https://www.webmd.com/drugs/2/drug-18053/keppra-oral/details (last visited Mar. 21, 2022). It is used to treat seizures (epilepsy) and may decrease the number of seizures a person has. *Id.*

[4] Medical records reflect that Hammer had a "possible seizure." (*See* ECF No. 103-4, at 9.) The treating physician noted that he believed that Hammer "likely had a fictitious seizure." (*Id.*)

had tried a "host of other antiseizure medications," but that gabapentin and Keppra combination "was found to be the only effective antiepileptic therapy for him." (*Id.*) Hammer claims that Dr. Ottolini stated that if there were medical records which documented a neurologist prescribing Hammer gabapentin for his seizures, he would "be happy to discuss re-starting the gabapentin." (*Id.*) Hammer alleges that he told Dr. Ottolini that both the VDOC and Augusta Health had records showing that he was prescribed the gabapentin and Keppra combination for antiepileptic therapy.

Hammer claims that on September 24, 2020, Dr. Ottolini reviewed Hammer's medical records from Augusta Health and "again refused to re-start the gabapentin/Keppra combination." (*Id.*) Hammer alleges that he informed Dr. Ottolini that he was "putting [Hammer] at risk to suffer a serious injury." (*Id.*) Hammer alleges that he continued to suffer seizures.

In support of his motion for summary judgment, Dr. Ottolini filed an affidavit. Dr. Ottolini avers that he only saw and treated Hammer on four occasions, and only two of them concerned Hammer's complaints of seizures. At the first appointment on August 31, 2020, Hammer requested gabapentin and Dr. Ottolini explained that Keppra was a seizure medication, noted that Hammer had not been taking it as prescribed, and instructed Hammer "to continue taking that medication." (Aff. of Scott Ottolini ¶ 12–13, Jan. 29, 2021 [ECF 96-1].) Dr. Ottolini states that he also explained to Hammer that to be able to prescribe gabapentin, he "would need medical records from a neurologist evidencing that [] Hammer had been prescribed [g]abapentin for the seizures." (*Id.* ¶ 15.)

Dr. Ottolini next saw Hammer on September 24, 2020, and Hammer again asked Dr. Ottolini to prescribe gabapentin. Dr. Ottolini states that, by that time, he had reviewed Hammer's medical records from Augusta Health. Dr. Ottolini avers that the medical records showed that the emergency medicine physician at Augusta Health "felt that [] Hammer had had a 'factitious seizure.'"[5] (*Id.* ¶ 18.) Based on this information, Dr. Ottolini determined that he was "unable to prescribe" Hammer gabapentin. (*Id.* ¶ 19.) However, Dr. Ottolini ordered a neurologist consultation for Hammer. On the same day, Dr. Ottolini also prescribed anti-fungal cream and blood pressure medication for treatment of medical concerns unrelated to Hammer's seizures.

Dr. Ottolini saw Hammer on two more occasions, on October 26, 2020, and November 11, 2020; both visits were unrelated to Hammer's seizures.[6] In October, Dr. Ottolini examined Hammer's complaint of back pain and prescribed a pain medication. In November, Dr. Ottolini ordered blood work and a urinalysis in response to Hammer's complaints of kidney and flank pain.

Dr. Ottolini avers that "Hammer's condition, considering his choice to refuse taking the Keppra, did not constitute a serious medical need." (*Id.* ¶ 35.)

---

[5] "Factitious disorder is a serious mental disorder in which someone deceives others by appearing sick, by purposely getting sick or by self-injury." Mayo Clinic, Factitious disorder, https://www.mayoclinic.org/diseases-conditions/factitious-disorder/symptoms-causes/syc-20356028 (last visited Mar. 21, 2022). "Although people with factitious disorder know they are causing their symptoms or illnesses, they may not understand the reasons for their behaviors or recognize themselves as having a problem." (*Id.*)

[6] In his response to Dr. Ottolini's motion for summary judgment, Hammer claims, for the first time, that he complained to Dr. Ottolini about his seizures at his October and November 2020 appointments. Even if this is true, it does not affect the court's analysis of Hammer's claim against Dr. Ottolini.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World*

*Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

Hammer alleges that Dr. Ottolini failed to provide adequate medical treatment for his seizures because he did not prescribe gabapentin. The court concludes, however, that Hammer has not established that Dr. Ottolini was deliberately indifferent to a serious medical need and, therefore, will grant Dr. Ottolini's motion for summary judgment.

To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (U.S. 1994).

"[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm

exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Further, "prisoners do not have a constitutional right to the treatment of his or her choice." *King v. United States*, 536 F. App'x 358, 362-63 (4th Cir. 2013) (unpublished) (internal citations omitted). A claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). With respect to prescription medications, a prisoner's "dissatisfaction with the course of his treatments and the doctors' decisions about which medications may be prescribed does not implicate a constitutional violation." *Conrad v. Akers*, No. 7:10cv560, 2011 WL 3847017, at *9 (W. D. Va. 2011) (citing *Estelle*, 429 U.S. at 104).

Hammer's prescription for gabapentin was terminated on July 1, 2019, pursuant to a change in VDOC policy given its designation as a controlled substance. Although he still had a prescription for Keppra, Hammer refused to take it without the gabapentin. Dr. Ottolini treated Hammer for the first time on August 31, 2020, more than a year after the gabapentin had been discontinued.

At the August 31 appointment, after Hammer requested a prescription for gabapentin, Dr. Ottolini explained to Hammer that Keppra was a seizure medication and instructed

Hammer to continue taking that medication, as prescribed. Hammer claims that Dr. Ottolini stated that, if there were medical records which documented a neurologist prescribing Hammer gabapentin for his seizures, he would "be happy to *discuss* re-starting the gabapentin." (ECF No. 80, at 4 (emphasis added).) Dr. Ottolini next saw Hammer on September 24, 2020. Before that appointment, Dr. Ottolini reviewed Hammer's medical records from Augusta Health. Although Hammer again asked for a gabapentin prescription, Dr. Ottolini determined that it was not appropriate based on Augusta Health's doctor's indication that Hammer's seizure was likely factitious. But Hammer still had a valid prescription for Keppra, an anti-seizure medication. Dr. Ottolini also ordered a neurologist consult for Hammer after that appointment. Nothing in the record suggests that Dr. Ottolini's treatment of Hammer was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Militier*, 896 F.2d at 851. Although Hammer may desire a different course of treatment, his disagreement with Dr. Ottolini's treatment plan is not actionable under § 1983. The court therefore cannot find that Dr. Ottolini was deliberately indifferent to a serious medical need of Hammer.

## IV.

For the reasons stated, the court will grant Dr. Ottolini's motion for summary judgment.

- 9 -

The clerk is directed to forward a copy of this memorandum opinion and accompanying order to the parties.

**ENTERED** this 22nd day of March, 2022.

>   */s/ Thomas T. Cullen*
>   HON. THOMAS T. CULLEN
>   UNITED STATES DISTRICT JUDGE