IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GREGORY LEON HAMMER, | ) |
| | ) Civil Action No. 7:20cv00526 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| PATRICK OBER, *et al.*, | ) By:  Hon. Thomas T. Cullen |
| | )        United States District Judge |
| Defendants. | ) |

Gregory Leon Hammer, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, against medical and other staff at Middle River Regional Jail ("Middle River"), alleging that they failed to provide him with constitutionally adequate medical care related to his seizures. Physician Assistant ("PA") Ober has moved to dismiss Hammer's third amended complaint, arguing that Hammer has not adequately alleged that Ober was deliberately indifferent to a serious medical need.[1] After reviewing the pleadings, the court agrees and will grant his motion.

### I.

In his third amended complaint, Hammer argues that the defendants, including PA Ober, were deliberately indifferent to his serious medical needs because they discontinued and/or did not re-prescribe gabapentin as treatment for his seizures.

---

[1] On March 22, 2022, the court granted Dr. Ottolini's motion for summary judgment. (*See* ECF Nos. 141 and 142.) In addition, PA Munsey has moved to dismiss (ECF No. 153), and Dr. Hereford, Director Nicholson, and Nurse Chestnut have moved for summary judgment (ECF Nos. 102, 56, & 58). The court will address those motions separately.

Hammer alleges that on November 27, 2018, he was treated for a seizure at Augusta Health Center ("Augusta Health"), a local hospital, and his anti-seizure medications of gabapentin[2] and Keppra[3] were "renewed." Hammer states that these two prescriptions were brought with him when he entered Middle River that same day. Hammer claims that he continued to receive his prescriptions for gabapentin and Keppra from November 2018 until June 2019. In June 2019, Hammer alleges that medical staff informed him that gabapentin had become a controlled substance and would no longer be prescribed at Middle River. Medical staff ordered a taper of Hammer's gabapentin prescription, with it terminating on July 1, 2019. But Hammer's prescription for Keppra remained in effect.

Hammer claims that he was told that only inmates who had been prescribed gabapentin for seizures would continue to receive it. Hammer claims that he advised medical staff that his prescription for gabapentin was to treat his seizures and requested that staff obtain his medical records from Augusta Health and the VDOC to confirm this. Hammer states that his "pleas" for staff to obtain his medical records "went ignored." (ECF No. 80, at 3.) Hammer states that in August 2019, he stopped taking the Keppra because it was "ineffective and was making him vomit." (*Id.*)

On July 27, 2020, more than a year after his gabapentin prescription had been discontinued, Hammer alleges that he informed PA Ober that he had been having seizures

---

[2] Gabapentin is anticonvulsant or antiepileptic drug. *See* WebMD, Gabapentin, https://www.webmd.com/drugs/2/drug-14208-8217/gabapentin-oral/gabapentin-oral/details (last visited Mar. 21, 2022). It is used with other medications to prevent and control seizures. *Id.*

[3] Keppra is an anticonvulsant. *See* WebMD, Keppra, https://www.webmd.com/drugs/2/drug-18053/keppra-oral/details (last visited Mar. 21, 2022). It is used to treat seizures (epilepsy) and may decrease the number of seizures a person has. *Id.*

"because the Keppra without the gabapentin was ineffective for antiepileptic therapy," and that he had tried a "host of anti-seizure medications, but the gabapentin/Keppra combination was . . . the only effective antiepileptic therapy for him." (*Id.*) Hammer claims that PA Ober stated that he did not have medical records to support prescribing both medications. Hammer states that he advised PA Ober that, without the gabapentin/Keppra combination, he would "be subjected to additional seizures and be at further risk of suffering serious injuries therefrom." (*Id.*) Hammer alleges that he was seen and treated by a doctor approximately one month after his July 27 appointment with PA Ober. The doctor had reviewed Hammer's medical records and also did not prescribe gabapentin. Hammer alleges that PA Ober and a doctor both told him that a neurology consult would be ordered. Hammer alleges that he continued to suffer seizures. Although he cannot amend his complaint through his brief in response to a motion to dismiss, *see Maher v. Thomson*, No. 7:21cv00143, 2021 WL 6072566, at *3 (W.D. Va. Dec. 23, 2021), the court notes that Hammer alleges for the first time in response to PA Ober's motion to dismiss that on January 20, 2021, Hammer asked PA Ober to review his neurology reports in his chart for reconsideration of the gabapentin prescription and that PA Ober replied that he already had reviewed those reports and that "no changes" to his prescriptions would be made. (*See* ECF No. 111-1, at 5.)

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering

a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Id.*; *see Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "liberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not

. . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. Feb. 8, 2021) (quoting *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999)).

## III.

Hammer alleges that PA Ober failed to provide adequate medical treatment for his seizures because he did not prescribe gabapentin. The court concludes, however, that Hammer has not established that PA Ober was deliberately indifferent to a serious medical need and, therefore, will grant PA Ober's motion to dismiss.

To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (U.S. 1994).

"[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989).

Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Further, "prisoners do not have a constitutional right to the treatment of his or her choice." *King v. United States*, 536 F. App'x 358, 362-63 (4th Cir. 2013) (internal citations omitted). A claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975). With respect to prescription medications, a prisoner's "dissatisfaction with the course of his treatments and the doctors' decisions about which medications may be prescribed does not implicate a constitutional violation." *Conrad v. Akers*, No. 7:10cv560, 2011 WL 3847017, at *9 (W. D. Va. Aug. 30, 2011) (citing *Estelle*, 429 U.S. at 104).

Hammer alleges medical staff informed him that, because gabapentin had been designated as a controlled substance, it was no longer available to be prescribed, except in limited circumstances. Accordingly, on July 1, 2019, another medical provider terminated Hammer's prescription for gabapentin. Although he still had a prescription for Keppra, an anti-seizure medication, Hammer refused to take it without the gabapentin. PA Ober treated Hammer on July 27, 2020, more than a year after the gabapentin had been discontinued.

Nothing in the record suggests that PA Ober's treatment of Hammer was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Militier*, 896 F.2d at 851. PA Ober's decision not to restart Hammer's prescription for gabapentin amounts to, at most, a disagreement between a patient and medical staff over course of treatment, which is not actionable under § 1983. The court, therefore, cannot find that PA Ober was deliberately indifferent to a serious medical need of Hammer.

## IV.

For the reasons stated, the court will grant PA Ober's motion to dismiss.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 25th day of March, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE