IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GREGORY LEON HAMMER, ) | |
| ) | Civil Action No. 7:20cv00526 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| BARRY MUNSEY, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) |           United States District Judge |
| Defendants. ) | |

Gregory Leon Hammer, a Virginia inmate proceeding *pro se*, filed this action under 42 U.S.C. § 1983, against medical and other staff at Middle River Regional Jail ("Middle River"), alleging that they failed to provide him with constitutionally adequate medical care concerning his seizures. Physician Assistant ("PA") Munsey has moved for summary judgment, arguing that Hammer has not presented any material facts on which he could persuade a reasonable jury that he was deliberately indifferent to a serious medical need.[1] After reviewing the evidence, the court agrees and will grant Munsey's motion.

I.

A. Hammer's complaint

In his verified third amended complaint, Hammer argues that the defendants were deliberately indifferent to his serious medical condition because they discontinued his prescription for gabapentin, which was allegedly prescribed as a treatment for seizures.

---

[1] The court previously granted Dr. Ottolini and Dr. Hereford's motions for summary judgment and PA Ober's motion to dismiss. (*See* ECF Nos. 141, 142, 148, 149, 152, & 153.) In addition, Director Nicholson and Nurse Chestnut have moved for summary judgment (ECF Nos. 56 & 58). The court will address those motions separately.

Hammer states that on November 27, 2018, he was treated for a seizure[2] at Augusta Health Center ("Augusta Health"), a local hospital, and his anti-seizure medications of gabapentin[3] and Keppra[4] were "re[]newed." (ECF No. 80, at 2.) Hammer alleges that he brought those two prescriptions with him when he entered Middle River later that day. Hammer claims that he continued to receive the prescriptions for gabapentin and Keppra at Middle River from November 2018 through June 2019, when defendant PA Munsey reviewed his medical records and "ordered a taper of the gabapentin." (*Id.*)

On June 25, 2019, Hammer saw a doctor who informed him that gabapentin had become a controlled substance and was being discontinued at Middle River. Hammer claims that the doctor said that only inmates who were receiving the medication for seizures would continue to receive it. Hammer alleges that he told the doctor that the Virginia Department of Corrections had custody of his medical records and that without the gabapentin, he would "start having seizures again." (*Id.*) Hammer claims that the doctor informed him that he would "check the records and [have] staff review for confirmation [the the] gabapentin [was prescribed] for seizures." (*Id.*)

---

[2] Medical records reflect that Hammer had a "possible seizure." (ECF No. 103-4, at 9.) The treating physician noted that he believed that Hammer "likely had a fictitious seizure." (*Id.*)

[3] Gabapentin is anticonvulsant or antiepileptic drug. *See* WebMD, Gabapentin, https://www.webmd.com/drugs/2/drug-14208-8217/gabapentin-oral/gabapentin-oral/details (last visited Feb. 28, 2023). It is used with other medications to prevent and control seizures. *Id.* It is also used to relieve nerve pain. *Id.*

[4] Keppra is an anticonvulsant. *See* WebMD, Keppra, https://www.webmd.com/drugs/2/drug-18053/keppra-oral/details (last visited Feb. 28, 2023). It is used to treat seizures (epilepsy) and may decrease the number of seizures a person has. *Id.*

Hammer does not allege that he saw or was treated by PA Munsey after June 2019. He did, however, receive treatment from other medical staff at Middle River through the time he filed this action, but none of them re-prescribed him gabapentin, even after seeing his medical records from other institutions.[5]

### B. PA Munsey's motion for summary judgment

In support of his motion for summary judgment, PA Munsey filed a declaration and Hammer's pertinent medical records. Munsey worked on a part-time basis at Middle River from approximately April 2015, until July 31, 2019. (Decl. of Barry Munsey ¶ 1 [ECF No. 136-1].) While at the Middle River, PA Munsey was supervised by a physician. (*Id.* at ¶ 2.)

Hammer was booked at Middle River on November 27, 2018, after being arrested in Waynesboro earlier that day. (*Id.* at ¶ 4.) When officers arrested him, he appeared to be showing seizure-like activity, so they transported to Augusta Health to be evaluated for a possible seizure. (*Id.*) Hammer was on chronic anti-seizure medications but reported that he had not been taking his medication. (*Id.*) The emergency department doctor determined that Hammer's seizure was "likely fictitious"—i.e., the physician believed that Hammer had "faked the seizure." (*Id.*) Nevertheless, the doctor prescribed Keppra and gabapentin to Hammer "so he could resume his prior medications," and Hammer was transported to Middle River for booking. (*Id.*)

PA Munsey avers that he had limited interactions with Hammer related to his alleged seizures. (*Id.* at ¶ 5.) On November 28, 2018, "for continuation of care," PA Munsey

---

[5] The court notes that that Hammer's prescription for gabapentin was apparently renewed in late 2022. (ECF No. 175 at 4.)

prescribed Hammer gabapentin and Keppra. (*Id.* at ¶ 5.) PA Munsey saw Hammer on December 3, 2018, for a requested diet change after Hammer reported that he was lactose intolerant. (*Id.* at ¶ 6.) At this appointment, Hammer made no complaints about seizures or anti-seizure medication. (*Id.*)

PA Munsey saw Hammer for the second and last time on January 31, 2019. (*Id.* at ¶ 7.) Hammer reported a seizure three weeks prior—but none since—and requested to take Keppra once per day instead of twice per day, as he had been. (*Id.*) PA Munsey approved the request. (*Id.*) PA Munsey avers that he "was not concerned about the lower dose because it is up to the patient to describe his seizures and Hammer reported taking Keppra once a day was effective." (*Id.*) Munsey maintained Hammer's gabapentin dose at that time. (*Id.*) Later that day, Hammer was caught "cheeking" his medications– i.e., "placing the medications between his gums and cheek to avoid swallowing." (*Id.*)

PA Munsey states that gabapentin is commonly used to treat nerve pain and can also be used to treat seizures. (*Id.* at ¶ 8.) On March 5, 2019, the Virginia General Assembly passed an amendment to the Virginia Code that added gabapentin to the list of Class V controlled substances, effective July 1, 2019. (*Id.*) Prior to that, gabapentin had not been considered a controlled substance. (*Id.*) PA Munsey asserts that gabapentin is an "addictive drug" that has a high value to prisoners and is "widely abused in prison populations because it induces euphoria." (*Id.*)

According to Munsey, on June 19, 2019, either he or his supervising doctor ordered Hammer's gabapentin prescription "to be tapered and then discontinued."[6] (*Id.* at ¶ 9.) The gabapentin dosage was not changed, however, until June 25, 2019, when Hammer met with the doctor and the doctor changed the prescription. (ECF No. 59-1 at 43.) Munsey states that, based on the information he had, there was no clinical basis to treat Hammer's seizures with Keppra *and* gabapentin. (Munsey Decl. ¶ 10.) In his 25 years of practice, Munsey has rarely prescribed gabapentin, and only then to treat pain from conditions like neuropathy and fibromyalgia. (*Id.*) Based on his knowledge, "Keppra was sufficient on its own to treat Hammer's alleged seizures." (*Id.*) Munsey avers that Hammer never told him that Keppra was ineffective or had an adverse effect on him, and Munsey was not aware of any medical basis why Keppra would have been ineffective or cause any adverse effects. (*Id.*) Munsey states that Hammer's medical records from a prior institution, Central State Hospital, indicate he was only provided with gabapentin "for chronic pain, not seizures." (*Id.*) According to Munsey, he had no information that Hammer suffered any seizures from the time Hammer's gabapentin taper started until the end of Munsey's employment at Middle River on July 31, 2019. (*Id.* ¶ 11.)

PA Munsey also asserts that Hammer's medical records show a history of hoarding gabapentin, "indicating drug abuse, which further supported the decision to discontinue Hammer's gabapentin prescription." (*Id.* at ¶ 12.) Munsey asserts that on July 1, 2019, Hammer

---

[6] The medical records indicate that the doctor ordered the taper on June 19, 2019; a nurse's note in the medical records from June 21, 2019, however, indicates that PA Munsey ordered the taper. (*Id.* at ¶ 9.) Munsey avers that he does not recall having a role in ordering the gabapentin taper or discontinuing Hammer's gabapentin prescription. (*Id.*)

himself requested to discontinue the gabapentin altogether. (*Id.*) The medical records also show Hammer refused to take Keppra on multiple occasions. (*Id.*) Munsey argues that, although Hammer claims to have seizures, he refused to take medication that would prevent them. (*Id.*) This indicated to Munsey that Hammer did not have a "true seizure disorder." (*Id.*) Nevertheless, Munsey treated Hammer's alleged seizures by initially prescribing Keppra and gabapentin, and then keeping him on anti-seizure medication Keppra when he tapered off gabapentin. (*Id.*) Munsey states that during his "limited treatment of Hammer for his alleged seizures, [he] provided a course of treatment [he] believed was most effective to address Hammer's medical needs." (*Id.* ¶ 14.)

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249−50 (internal citations omitted).

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315−16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

Hammer alleges that PA Munsey failed to provide adequate medical treatment for his seizures because he ordered a taper of Hammer's gabapentin prescription. The court concludes, however, that Hammer has not presented any material facts that might persuade a reasonable jury that Munsey was deliberately indifferent to a serious medical need, and, therefore, the court will grant Munsey's motion for summary judgment.

To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492

(E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (U.S. 1994).

"[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Mere negligence does not constitute deliberate indifference; rather, a prison official must *both* be aware of the facts from which the inference could be drawn that a substantial risk of harm exists *and* must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Further, "prisoners do not have a constitutional right to the treatment of his or her choice." *King v. United States*, 536 F. App'x 358, 362−63 (4th Cir. 2013) (unpublished) (internal citations omitted). A claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). Questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir.

1975). With respect to prescription medications, a prisoner's "dissatisfaction with the course of his treatments and the doctors' decisions about which medications may be prescribed does not implicate a constitutional violation." *Conrad v. Akers*, No. 7:10cv560, 2011 U.S. Dist. LEXIS 97420, *27, 2011 WL 3847017, at *9 (W. D. Va. 2011) (citing *Estelle*, 429 U.S. at 104).

Middle River changed its policy concerning gabapentin beginning in the spring of 2019, after the medication was classified as a controlled substance. (Decl. of Lee Hereford ¶ 7, May 16, 2021 [ECF No. 103-1].) Gabapentin prescriptions to Middle River inmates were thereafter treated with "increased scrutiny" and only permitted for inmates who were prescribed the medication for treatment of seizures. (*Id.*) A review of Hammer's medical chart in June 2019 revealed that there was "insufficient documentation" of Hammer's alleged seizure disorder to warrant continuing his prescription for gabapentin. (*Id.* ¶ 46.) Medical records show that Hammer's prescription for gabapentin was decreased as of June 25, 2019, and he continued to receive the lower dosage until the prescription was discontinued on July 1, 2019. (ECF No. 59-1 at 41–43.) But even after the gabapentin was stopped, he still had a prescription for Keppra, another anti-seizure medication. (*Id.*) There is no evidence that PA Munsey had medical records or knowledge establishing that the provider should have prescribed Hammer gabapentin before PA Munsey left his employment at Middle River 30 days later, on July 31, 2019. In fact, other staff who subsequently reviewed Hammer's medical records and requests for gabapentin also denied him the medication. The record is simply devoid of any evidence suggesting that PA Munsey's limited treatment of Hammer was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Militier*, 896 F.2d at 851. Although Hammer may have desired a different course of

treatment, his disagreement with Munsey's treatment plan is not actionable under § 1983. The court, therefore, cannot find that PA Munsey was deliberately indifferent to a serious medical need of Hammer.[7]

## IV.

For the reasons stated, the court will grant PA Munsey's motion for summary judgment.

The Clerk is directed to forward a copy of this memorandum opinion and accompanying order to the parties.

**ENTERED** this 2nd day of March, 2023.

/s/ *Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[7] Hammer also filed a motion to amend his third amended complaint to add a claim of medical malpractice against PA Munsey. (ECF No. 171.) In his motion, Hammer argues that "Munsey's action in discontinuing the gabapentin, for the reasons he did, certainly constitute a malpractice claim, but may not rise to the higher standard of deliberate indifference. . . ." (*Id.* at 2.) Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). But leave to amend a pleading should be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). In this case, the proposed amendment would be futile because Hammer's allegations fail to state a malpractice claim.

Under Virginia law, to state a claim for medical malpractice, a plaintiff must allege: (1) existence of a legal duty, (2) a breach of that duty, and (3) that the breach proximately caused plaintiff's injuries. *See Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 523 S.E.2d 826, 830 (Va. 2000); *see also Wright v. Smith*, 641 F. Supp. 2d 536, 539-40 (W.D. Va. 2009) (medical malpractice claim requires allegation that the defendant owed the plaintiff a certain standard of medical care, the defendant breached that standard of care, and the breach proximately caused the plaintiff's injuries); *Parker v. United States*, 475 F. Supp. 2d 594, 598 (E.D. Va. 2007) (quoting *Bryan v. Burt*, 254 Va. 28, 486 S.E.2d 536 (Va. 1997)). In this case, although PA Munsey was providing medical treatment to Hammer, the decision to taper and discontinue the gabapentin prescription did not take effect until after Hammer met with Munsey's supervising doctor on June 25, and that doctor ordered the taper. Accordingly, the court cannot find that Munsey's actions were the proximate cause of any injury Hammer may have suffered and, therefore, the court will deny Hammer's motion to amend.